

George C. Paine, II
US Bankruptcy Judge
Dated: 11/19/08



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

In Re:

BARNHILL'S BUFFETS, INC.,
ET AL.,
Debtor

BARNHILL'S BUFFET, INC.,
Plaintiff,

v.

SCS GENERAL CONTRACTORS
INC., et al.,
Defendants.

SCS GENERAL CONTRACTORS,
INC. Counterplaintiff,
Cross-Plaintiff,

v.

BARNHILL'S BUFFET, INC.,
Counterdefendant, and LEVINE
INVESTMENTS LIMITED
PARTNERSHIP, et al.,
Cross-Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 07-08948
CHAPTER 7
JUDGE GEORGE C. PAINE, II

Adversary Proceeding Number
08-0021A

---

## MEMORANDUM

---

This matter is before the court on the motions for summary judgment filed by

Wells Fargo Bank, N.A., ("Wells") and Dynamic Management Company, LLC

("Dynamic") against SCS General Contractors, Inc. ("SCS"). SCS opposed both

motions but did not file cross motions.[1]  For the reasons cited herein, the court finds

there are no material facts in dispute and both Wells and Dynamic are entitled to

judgments as a matter of law.  The following constitutes the court's findings of fact

and conclusions of law.[2]


## General Background Facts Related to Both Motions

On December 3, 2007, Barnhill's filed a voluntary chapter 11 petition.  When

the case was filed, the debtor operated twenty-nine buffet style restaurants in six

states.  According to the debtor's schedules, its major secured creditor, Wells Fargo

Bank, held a $23,256,526.00 claim secured by substantially all of the Debtor's

assets, except the leasehold interests of the restaurant locations.  The Debtor's total

liabilities, including the amount owed to Wells Fargo Bank, was $27,576,894.00. The

Debtor valued its assets at $3,661,333.00 on its bankruptcy schedules.


Following the filing of the petition, the Court entered an Interim DIP Financing

---

[1]  SCS's opposition to the motions for summary judgment also requested a continuance of the summary judgment hearings to allow further discovery pursuant to Fed.R.Bank.P. 7065(f).  To the extent SCS seeks an extension on these issues, the court DENIES such relief.

[2] Also before the court is  Spirit Finance Corporation, as special servicer for Spirit SPE Portfolio 2004-6, LLC's  ("Spirit"), a cross defendant in the Cross-Complaint asserted by SCS General Contractors, Inc. Motion to Dismiss the cross-claims asserted against Spirit on the grounds that the Cross-Complaint fails to state a claim against Spirit for which relief can be granted.  Spirit's motion was unopposed and the court therefore, GRANTS Spirit's Motion to Dismiss.

Order.  On December 21, 2007, the Court entered the Final DIP Financing Order

which provided in relevant part as follows:

> To secure its DIP Obligations under the DIP Loan Documents, the DIP
> Lender is hereby granted valid, binding, enforceable and first-priority
> perfected security interests in and liens (the "DIP Liens") on and to the
> following (collectively, the "Collateral"): All real and personal property
> of the Debtor, including without limitation, inventory, accounts,
> equipment, fixtures, general intangibles (including, without limitation,
> tax refunds, trademarks, tradenames, copyrights, and licenses),
> instruments, documents, investment property, stock, chattel paper, and
> goods, (respectively as defined in the Uniform Commercial Code), all
> proceeds of real estate, including all proceeds from the sale,
> disposition, or assignment of any leasehold interests, and all other
> "Collateral" (as defined in the DIP Loan Documents), all of the
> foregoing now owned or in which the Debtor has any interest (and
> without regard to whether acquired prior or subsequent to the Petition
> Date) or hereafter acquired or in which the Debtor obtains an interest;
> and the products and proceeds thereof. The Collateral does not include
> any avoidance actions under Chapter 5 of the Code.

Prior to filing, in 2005, the debtor contracted with SCS to remodel, expand

and improve on one of its' Mississippi properties (hereinafter "the Jackson Property")

to operate as a Barnhill restaurant.  According to SCS the total cost of the Jackson

project was $476,809.35, of which $328,668.90 has been paid, leaving an unpaid

balance owed SCS for its work on the Jackson Property of $148,140.45.

SCS also performed pre-petition construction work in connection with the

repair, remodeling and improvement of two other Mississippi locations ("the Gulfport

Property" and "the Meridian Property") after Hurricane Katrina. According to SCS the total cost of the Gulfport project was $263,158.60, of which $204,977.46 has been paid, leaving an unpaid balance owed SCS for its work on the Gulfport Property of $58,181.14. The total cost of the Meridian project was $86,967.00, of which $46,750.00 has been paid, leaving an unpaid balance due SCS for its work on the Meridian Property of $40,217.00.

Prior to the bankruptcy filing, SCS filed a lawsuit in Mississippi seeking payment of its alleged claim on an unjust enrichment theory. The suit was subsequently removed to federal court, and then stayed by the filing of the debtor's bankruptcy filing.

Once in bankruptcy, the debtor sought to sell its restaurants as operating entities. On January 28, 2008, the Court entered the Order approving the Debtor's motion to approve the sale of sixteen of the debtor's restaurants ("the Spirit I sale"). SCS objected to the sale of the restaurants. To allow the sale to proceed, the order provided as to SCS:

> 16. Pursuant to the terms of the order entered by the Court and stipulated to by the parties to that certain adversary proceeding commenced by the Debtor against SCS General Contractors, Inc. ("SCS"), et al. (Adv. Proc. No. 3:08-ap-00021) (the "Stipulated Order"), Sale Proceeds in the amount of $188,357.45 shall be placed in a

segregated interest-bearing debtor in possession account (the "SCS Escrow Funds") pending the final adjudication of the claims asserted by SCS. In accordance with the Stipulated Order, withdrawal of SCS Escrow Funds for any purpose shall only be made pursuant to further order of this Court. In contemplation of the foregoing, SCS has withdrawn its objection to the Motion.

On February 29, 2008, the Court entered the Order approving the sale of the debtor's remaining four restaurants ("the Spirit II sale). SCS again objected, but withdrew its objection after it was agreed that additional funds would be placed in escrow pending determination of SCS's claims. Subsequent to the sales, a "global settlement" was reached resolving most all issues left in the case, and, the debtor's chapter 11 case was converted to chapter 7.


Barnhill's filed the present adversary proceeding on January 16, 2008 against SCS General Contractors, Inc., Levine Investments Limited Partnership, Spirit Master Funding, LLC, Hamilton Estate, Inc., Sowashee Venture, LLC, Wells Fargo Bank, N.A., and Dynamic Management, LLC. On March 11, 2008, SCS filed its answer to the Barnhill declaratory action, its Counterclaim against Barnhill, and its Cross-Claim against Cross-Defendants Levine Investments Limited Partnership, Hamilton Estate, Inc./Sowashee Venture, LLC, Spirit Master Funding, LLC, and Dynamic Management, LLC. SCS's counter and cross complaints allege that Barnhill's/Dynamic's refusal to pay the sums due and owing to SCS constitutes a breach of contract. In addition

to monetary damages, SCS prayer for relief asks:

> this Court will impress an equitable lien on the Jackson Property, the Gulfport Property and the Meridian Property for the sums remaining due to SCS for the alterations and improvements to each of said Properties and for the interest, cost and fees of this action associated with or attributable to each of said Properties.

> SCS also prays that the Court will award it the total amount of the escrows established for this litigation to the extent of the orders establishing the escrows.

As to Dynamic, SCS alleges that Dynamic was the alter ego of Barnhill's, and therefore, should be held jointly and severally liable on the claims asserted by SCS. Specifically, SCS's counter-complaint states:

> Barnhill's/Dynamic and Levine are liable to SCS, jointly and severally, in contract, quasi contract, quantum meruit or for unjust enrichment for the sums demanded by SCS herein with regard to the Jackson Property.

> SCS is entitled to have an equitable lien impressed upon the fee of the Jackson Property to secure and insure the payment of the sums due SCS.

SCS is suing based on its claims of an equitable lien against the leasehold interests of the debtor (escrowed money) and an equitable lien against the fee (property of lessors). Dynamic contends that SCS is merely an unpaid, disgruntled creditor casting a wide net to gain payment.

A pretrial conference was held on August 11, 2008 at which time the parties

agreed that summary judgment motions were to be filed by October 3, 2008, responses by October 17, 2008 and a hearing on dispositive motions to be held November 4, 2008. Dynamic and Wells both filed motions for summary judgment but no like motion was filed by SCS. The court now has before it Wells' and Dynamic's motions for summary judgment.

## Standard for Summary Judgment

Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the party opposing summary judgment fails to make showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986); **Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp**., 475 U.S. 574, 588 (1986). The evidence, all facts, and any reasonable inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. **Matsushita Elec. Indus. Co.,** at 587.

**Well's Motion for Summary Judgment**

According to SCS, its' claims are two-fold: (1) it is entitled to an equitable lien against the leasehold interests of the Debtor in the properties in question (and those values are escrowed); and (2) it is entitled to an equitable lien against the fee (property of the lessors) in order that they not be unjustly enriched by SCS's work and expenditures (the satisfaction of which is covered by the escrow). Wells seeks to defeat SCS's claims insisting no material facts are in dispute, and Wells is entitled to a judgment as a matter of law.

### A.     SCS's Equitable Lien Claim as to the Leaseholds

At the time of the filing of the bankruptcy petition, Barnhill's assets included three restaurant properties that Barnhill's leased from Levine Investments, Limited Partnership, Sowashee Venture, LLC, and Spirit Finance Acquisitions, LLC. During the bankruptcy proceedings, Barnhill's interests in the Leaseholds were assigned to Star or Starlite as part of sales under § 363 of the Code. In order to resolve SCS's objections to the sale, the parties agreed that $244,000 be placed in escrow pending a determination of the validity of the claims of SCS and the rights to the $244,000 of sales proceeds.[3]

---

[3] The "Settlement Agreement" that resolved many other pending issues in the case granted SCS the following:

Wells shall have the right to object and participate in any contest of the SCS

The dispute at issue concerns certain monies allegedly owed to SCS by Barnhill's as a result of certain construction repair work performed by SCS on Barnhill's Gulfport, Meridan, and Jackson properties. SCS initially filed suit against Barnhill's in the First Judicial District of Hinds County, Mississippi. This suit sought monetary damages and prejudgment interest, but did not mention or seek the imposition of an equitable lien. Barnhill's never granted SCS an Article-9 type security interest in any of its Leaseholds and it is undisputed that SCS failed to perfect a mechanic's or materialmen's lien in any of the Leaseholds under Mississippi law or any other state.[4]

After Barnhill filed bankruptcy, the SCS state litigation, which had been removed to federal court, was stayed by the filing. In January 2008, Barnhill filed the present adversary proceeding against SCS as a declaratory judgment action. In its Answer and Countercomplaint, SCS raised the possible equitable lien on the leasehold for the first time.

---

claim.

Settlement Agreement, Dated March 17, 2008, approved by the court on April 5, 2008.

[4] The parties agree that to the extent relevant, Mississippi state law governs the parties' dispute.

SCS claims it has an equitable lien against Barnhill Leaseholds that is superior to the claims of the debtor and Wells[5], and second, that Barnhill was obligated to pay amounts owed to SCS pursuant to the terms of the three leases before assigning the leases Star or Starlite.

Under Mississippi law, an equitable lien arises at the time of the unjust enrichment. **First National Bank of Jackson v. Huff**, 441 So. 2d 1317 (Miss. 1983). The trust or lien is not created by court decree but instead arises by operation of law at the time of the alleged wrong. **Id**. However, the Mississippi Supreme Court also found that an equitable lien could not be imposed upon the real estate if the property had been transferred to a third party without notice. **Id**. Under SCS's theory, an equitable lien arose pre-petition that gave SCS a first priority lien payable by the debtor ahead of Wells because Wells had no lien on the leaseholds at the time of filing.

Wells does not contest whether or not an equitable lien arose prepetition in favor of SCS, but instead contends the existence of the equitable lien is rendered

---

[5] SCS claims that Wells did not have a security interest in the Leaseholds. SCS does not and cannot overcome the language of the Final DIP Financing Order granting Wells a superpriority lien in the Leaseholds. SCS also claims that the sale of the leaseholds satisfied Wells' DIP loan, and therefore SCS's equitable lien remained. SCS argument is circular in that any equitable lien held by SCS was extinguished upon the bankruptcy filing. **See Disccusion infra**.

irrelevant by the debtor's filing of bankruptcy, and the operation of bankruptcy law. According to Wells, the operation of the Bankruptcy Code acts to place the trustee and/or debtor-in-possession in the position of a bona fide purchaser ("BFP") not having notice of such claims. 11 U.S.C. § 544(a)(3); **In re Omegas**, 16 F.3d 1443, 1452 (6th Cir. 1994). When Barnhill's filed its bankruptcy petition, it became a debtor-in-possession and BFP, and the equitable lien of SCS terminated.

The Sixth Circuit held in **Omegas** that a "defrauded" creditor such as SCS, while having a state-law recognized equitable lien, does not necessarily get to retain that lien upon the filing of bankruptcy.

> [J]ust because something is so under state law does not necessarily make it so under the Bankruptcy Code. As this court has previously noted, "[w]hile the nature and extent of the debtor's interest are determined by state law[,] 'once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.' " **Bavely v. IRS ( In re Terwilliger's Catering Plus, Inc.)**, 911 F.2d 1168, 1172 (6th Cir.1990) (quoting **N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)**, 772 F.2d 462, 466 (8th Cir.1985)). . .
>
> We think that § 541(d) simply does not permit a claimant . . . to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee. Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust. Therefore, a

creator's claim of entitlement to a constructive trust is not an "equitable interest" in the debtor's estate existing prepetition, excluded from the estate under § 541(d).

**Omegas** at 1451.[6]  SCS tries to distinguish **Omegas** and **Huff** on the grounds that

the DIP had notice of SCS's claim against Barnhill's at the time of the filing of the

bankruptcy petition relying on **In re Martin**, 276 B.R. 552 (N.D. Miss. Bankr. 2001)

(holding "§ 544(a)(3) contemplates that a trustee shall be deemed to have the same

knowledge that would be gleaned from conducting an examination of the title to the

subject property as of the date of the filing of the bankruptcy petition."). The court

finds this argument of no avail since the parties agree that no lien would have been

revealed during a title search conducted on the real estate.


Under the dictates of **Omegas**, when Barnhill filed its bankruptcy petition, it

became a debtor-in-possession and BFP, and the equitable lien of SCS terminated.[7]

---

[6] The court in **Omegas** points out that:

> The reluctance of Bankruptcy Courts to impose constructive trusts without a substantial reason to do so stems from the recognition that each unsecured creditor desires to have his particular claim elevated above the others. Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly.

**Omegas**, 16 F.3d at 1451 (quoting **The Oxford Organisation, Ltd. v. Peterson ( In re Stotler and Co.)**, 144 B.R. 385, 388 (1992)).

[7] SCS also argues that Wells is somehow attempting to usurp the debtor's strong-arm powers under 11 U.S.C. § 544 powers in arguing the debtor's position as a BFP. The court finds no import to this line of reasoning. First, the March 17, 2008 Settlement Agreement gave Wells "the right to object and participate in any contest of the SCS claim."

When the leaseholds were sold, Wells received the proceeds of the sale from the debtor, a hypothetical BFP, and therefore, free of any equitable lien claimed by SCS.

SCS also asserts that Barnhill's had an obligation under each of the lease agreements to prevent liens from being recorded against the fee or the Leaseholds and to pay for any repairs arising from damage or destruction to the Leaseholds. However, SCS would not be entitled to enforce any breach of the lease or any cure clause because SCS is neither a party to the lease nor a third-party beneficiary to the lease. Under Mississippi law, in order to qualify as a third-party beneficiary under the lease, a party must show that (1) the terms of the contract are broad enough to include the third party either by name or as one of a specified class, (2) the alleged third party was evidently within the intent of the terms so used, and (3) the promisee had a substantial and articulate interest in the welfare of the alleged third party in respect to the subject of a contract. **Mississippi High School Activities Assoc. v. Farris**, 501 So. 2d 393, 396 (Miss. 1987). The affidavits presented by Wells are undisputed that SCS was not a party to the lease, and the court finds as a matter of law that SCS was not a third party beneficiary.

---

Secondly, the proceeds from the sale of the Leaseholds that passed through the hands of the Debtor in this bankruptcy case in satisfaction of its secured post-petition loan is the equivalent of a BFP transferring an interest to a third party.

SCS has put forth no **material** fact that remains in dispute and, Wells has shown that it is entitled to a judgment as a matter of law.  Accordingly, the court finds that Wells' Motion for Summary Judgment should be granted as to the Leaseholds' issue.

### B.    SCS's Claim as to the Fee Interests

SCS characterizes this action as one based on quasi contract, contract implied in law, or quantum meruit.  SCS claims that it would be inequitable to permit the owner of leased property to retain the benefit of improvements at the behest of a lessee who has then defaulted, leaving the unpaid contractor to bear the cost of the improvements.

Mississippi law anticipated just such a scenario and the legislature enacted § 85-7-137.  That section provides:

> Lien limited to tenants' building or estate
>
> If such house, building, structure, or fixture be erected, constructed, altered, or repaired at the instance of a tenant, guardian, or other person not the owner of the land, only the house, building, structure, or fixture, and the estate of the tenant or such other person, in the land, shall be subject to such lien, unless the same be done by the written consent of the owner.

**Miss. Code Ann. § 85-7-137.**  SCS correctly asserts that none of the locations

were of much value without SCS's work. The lessors in each case were aware of

SCS's work and remain absolute beneficiaries of SCS's work. Wells does not deny

that any of the landlords were aware of SCS's work, but contends that absent signed

written consent from the landlords, no equitable lien can attach under Miss. Code

Ann. § 85-7-137.[8] The court agrees.

The Mississippi statute does not distinguish between equitable and statutory

liens requiring notice. At least two Mississippi cases have discussed the requirement

of consent in the context of both equitable and statutory liens. **See e.g., Jim**

**Walter Corp. & Mid-State Homes, Inc. v. Gates,** 370 So.2d 928, 929-30 (Miss.

1979) (contractor given statutory and equitable lien against improvements only, and

not fee, despite owner's acquiesce to construction); **Brown v. Gravlee Lumber**

---

[8] In response to Wells' Statement of Undisputed Fact No. 4, SCS implicitly admits that no writing singed by a landlord was obtained in regard to the construction and renovation:

> 4. No written contract signed by any of the Landlords permitted SCS to impose a lien on any of the Landlords' fee interests in any real property. (See SCS Discovery Responses at 4-5).
>
> > RESPONSE: Disputed. SCS Response to Request for Admissions 4 and 5 states: "Denied, provided however that SCS admits that there is no written agreement between SCS and a Landlord to which the Landlord affixed its signature." The Contract Agreement for the work by SCS on the Jackson Property is signed by the "Authorized Agent of Owner." (SCS Ex.5).

A review of the Jackson Lease shows that the "Authorized Agent or Owner" signature is actually signed by Barnhill.

**Co.**, 341 So. 2d 907, 909 (Miss. 1977) (quoting **Chears Floor & Screen Co. v. Gidden**, 131 So. 426, 428 (Miss. 1930)) (holding "[i]f the house - the entire house - be constructed by the tenant, guardian, or other person not the owner of the land, then the entire building is subject to the lien, but not the lot in addition, unless the building is constructed with the written consent of the owner.").

The basis for these court's holdings can be found in the Mississippi statute and other similar state statutes seeking to prevent an unconstitutional taking of an owner's interest in property without due process. **See Chears Floor and Screen Co.,** 131 So. at 428. That aim is no less valid simply because the lien claimed is equitable instead of statutory. Accordingly, the court finds that because none of the landlords gave written consent, no lien, equitable or statutory, could have or did attach to the fee interests under Mississippi law.

Based on the above, the court finds that Wells' Motion for Summary Judgment shall be granted in full. All escrowed funds, pursuant to the parties' agreement, shall be released to Wells. SCS retains its claim as an unsecured creditor in the debtor's bankruptcy case. Wells shall prepare an order not inconsistent with this Memorandum within ten (10) days of entry of the Memorandum.

## Dynamic Management's Motion for Summary Judgment

SCS alleges that it is owed $246,538.59 for construction work it performed on three Barnhill's Buffet restaurants in Mississippi, and that Dynamic Management "managed and controlled Barnhill's, and Barnhill's was Dynamic's alter ego." [Cross-Complaint, ¶ 4]. Dynamic alleges that under either Mississippi or Tennessee law, SCS cannot demonstrate all essential elements of its claim, and therefore Dynamic is entitled to a judgment as a matter of law.[9]

The Mississippi Supreme Court has set forth specific requirements to prove an "alter ego" theory:

> the general rule [is] that the corporate entity will not be disregarded in contract claims unless the complaining party can demonstrate: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder.

**Gray v. Edgewater Landing, Inc**., 541 So. 2d 1044, 1047 (Miss. 1989). The court in **Gray** indicated these are not mere factors to be considered but instead stated, "[t]o present a jury issue on a demand that the corporate veil

---

[9] Under choice of law provisions in Tennessee, the law of the case, absent a contractual provision, is governed by the law where the contract is made and delivered. **Charles Hampton's A-1 Signs, Inc. v. American States Ins**. Co., 225 S.W.3d 482 (Tenn. Ct. App. 2006). All construction work was performed in Mississippi and therefore the court applies Mississippi law to the extent relevant.

be pierced, a party must present some credible evidence on each of these points."

**Gray**, 541 So. 2d 1047.  The court explained why this remedy is so limited:

> As do most courts, this Court has reserved piercing the corporate veil for factual circumstances which are clearly extraordinary-where to do otherwise would "subvert the ends of justice." **Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance**, 321 So.2d 281, 284 (Miss.1975). Among this Court's reports may be found a long string of decisions reflecting our law's commitment to the legal integrity of the corporate entity-and the concomitant limited liability of shareholders. **See e.g. Illinois Central Railroad Co. v. Cotton Seed Products Co.**, 166 Miss. 579, 589, 148 So. 371, 372 (1933) (exonerating parent corporation); **Berry Sons' Co., Inc. v. Owen**, 176 Miss. 562, 570, 169 So. 685, 687 (1936) (same); **Murdock Acceptance Corp. v. Adcox**, 245 Miss. 151, 164, 138 So.2d 890, 892 (1962) (same); **Rauch Industries, Inc. v. Poloron Products of Mississippi, Inc.**, 362 So.2d 605, 607 (Miss.1978) (same); **see also Gardner v. Jones**, 464 So.2d 1144, 1151 (Miss.1985) (exonerating principal shareholder and president acting as corporate agent); **see also T.C.L., Inc. v. Lacoste**, 431 So.2d 918, 922 (Miss.1983).

**Id.**  In support of its summary judgment motion, Dynamic offered the affidavit of

Craig Barber.  In his affidavit he states in part:

> 2.     I am one of the two members of Dynamic Management Company, LLC. The name of the other member of Dynamic Managemetn Company LLC is Robert M. (Bob) Langford.
>
> 3.     Dynamic Management Company, LLC has never had any employees.
>
>                          . . .
>
> 7.     Dynamic Management Company, LLC has never manages, owned, operated, or controlled Barnhill's Buffet, Inc or any Barnhill's Buffett restaurants.

8.   Dynamic Management Company, LLC has never had any involvement or authority regarding the accounts payable of Barnhill's Buffet, Inc or any Barnhill's Buffet restaurants.

9.   Dynamic Management Company, LLC always maintained a separate accounting system from Barnhill's Buffet, Inc.

10.  Dynamic Management Company, LLC never had a contractual relationship with SCS General Contractors, Inc.

11.  Dynamic Management Company, LLC never authorized or requested SCS General Contractors, Inc to conduct any work on a Barnhill's Buffet restaurant, nor would Dynamic Management Company, LLC have had authority to do so since it had no involvement with Barnhill's Buffet Inc.

**Affidavit of Craig Barber**, Oct. 3, 2008.   Dynamic presented all relevant SCS invoices sent to Barnhill's Buffet, Inc., and all checks paid to SCS drawn exclusively on Barnhill's Buffet, Inc. checks.

In response, SCS offered the affidavit of Mississippi counsel, James R. Mozingo, stating SCS had been through many boxes in the possession of the chapter 7 trustee, and found certain documents which "belie" Mr. Barber's affidavit.  Namely, Mr. Mozingo says he found an e-mail from Dynamic Management Controller, Stacy Gliexner speaking as if she controlled the flow of funds from Barnhill to SCS.  His affidavit mentions several other documents he considers contrary to Mr. Barber's affidavit.  This is SCS's only response to Dynamic's motion for summary judgment.

19-U.S. Bankruptcy Court, M.D. Tenn.

Rule 56(e) of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7056 provides:

(e) Affidavits; Further Testimony.

(1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

FED.R.CIV.P 56(e). None of the documents Mr. Mozingo refers to are sworn. Furthermore, the court does not find the allegations of Mr. Barber's affidavit rebutted by the affidavit of opposing counsel's theories of what he believes would be persuasive evidence. **See Powers v. Hamilton County Pub. Defender Comm'n,** 501 F.3d 592, 613 fn. 3 (6th Cir.2007); **Moore v. Holbrook,** 2 F.3d 697, 698-99 (6th Cir. 1993).

Even if Mr. Mozingo's affidavit were given any weight, his affidavit and the statements contained therein do not rebut Mr. Barber's statements or deny that all of the 29 invoices submitted by SCS for payment were submitted to and paid by Barnhill's – not Dynamic Management. Mr. Mozingo's affidavit is representative of SCS's desperation to have some entity, if Barnhill's cannot, pay for their services.

20-U.S. Bankruptcy Court, M.D. Tenn.

Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. **See Lujan v. National Wildlife Fed'n**, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). To defeat summary judgment, SCS "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." **Bell v. Ohio State Univ**., 351 F.3d 240, 247 (6th Cir. 2003).

Based on the foregoing, the court grants Dynamic's Motion for Summary Judgment and dismiss the claims of SCS against Dynamic. Dynamic shall prepare an order not inconsistent with this Memorandum within ten (10) days of entry of the Memorandum.

### THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.